### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES ALLEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GLAXOSMITHKLINE PLC; SMITHKLINE | : | |
| BEECHAM CORPORATION d/b/a | : | |
| GLAXOSMITHKLINE; and John Doe | : | NO. 07-5045 |

### MEMORANDUM RE:  REMAND TO STATE COURT

**Baylson, J.**                                                                                    **May 30, 2008**

James Allen ("Plaintiff" or "Allen") brought this products liability action in the Court of Common Pleas of Philadelphia County, Pennsylvania against Defendant GlaxoSmithKline ("Defendant" or "GSK") alleging that he experienced a severe life threatening asthma exacerbation and was subsequently injured on or about November 6, 2002 as a direct and proximate result of taking Defendant's drugs Serevent and/or Advair (Fluticasone Propionate), which contains Salmeterol.  Defendant removed the case pursuant to 28 U.S.C. § 1441(a).  Allen argues that the case was improperly removed because there is no federal jurisdiction; he has filed a Motion For Remand (Doc. No. 9).

Defendant opposes the Motion, asserting that the case was properly removed, and also that this Court must adjudicate Defendant's federal defenses, principally "preemption."  Finding no authority to support Defendant's arguments, the Motion to Remand will be granted.

### I.    Background and Procedural History

Plaintiff asserts that GSK's pharmaceutical products caused him to suffer a severe life-threatening asthma exacerbation.  The Complaint sets forth ten claims:  1) negligent and gross

-1-

negligent failure to warn; 2) fraudulent misrepresentation; 3) negligence; 4) strict liability; 5) breach of express warranty; 6) breach of implied warranty of merchantability and fitness; 7) breach of warranty of fitness for a particular purpose; 8) misrepresentation; 9) fraudulent concealment; and 10) negligent and intentional infliction of emotional distress.

Allen is a citizen of Arkansas and filed this action in Pennsylvania state court on November 19, 2007. The parties do not dispute that GSK is a Pennsylvania citizen, and the Complaint states that "[t]he amount in controversy exceeds, exclusive of interest and costs, the sum of fifty thousand ($50,000) dollars."

GSK removed this case to federal court before Allen served the Complaint, and the parties now dispute the propriety of that removal.[1]

## II.   Relevant Legal Standards

Federal courts are courts of limited jurisdiction, Willy v. Coastal Corp., 503 U.S. 131, 136-137 (1992). Federal district courts have subject matter jurisdiction over cases that meet the standards for diversity jurisdiction and cases that raise federal questions. Diversity jurisdiction exists where the matter in controversy exceeds the sum or value of $75,000, and the parties are citizens of different states. 28 U.S.C. § 1332(a).

Federal district courts have "federal question" jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "A case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief

---

[1] Counsel have advised the Court of some background concerning the service of process and how Defendant was aware of the case before it was served. However, these facts are disputed, but also are not relevant.

necessarily depends on resolution of a substantial question of federal law.'" Empire

Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006) (quoting Franchise Tax Bd. of

Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27-28 (1983)).

A defendant may remove an action from state court to federal court only when a federal

court would have had original jurisdiction over the action.  28 U.S.C. § 1441; Caterpillar, Inc. v.

Williams, 482 U.S. 386 (1987).  However, there is a restriction on the removal of diversity cases

known as the "forum defendant rule."  Pursuant to this rule, set forth in 28 U.S.C. § 1441(b),

removal is improper if the defendant is a citizen of the state in which the suit is originally filed.[2]

Korea Exchange Bank, New York Branch  v. Trackwise Sales Corp., 66 F.3d 46, 48 (3d Cir.

1995).

Section 1441(b) states:

> Any civil action of which the district courts have original
> jurisdiction founded on a claim or right arising under the
> Constitution, treaties or laws of the United States shall be
> removable without regard to the citizenship or residence of the
> parties.  *Any other such action shall be removable only if none of*
> *the parties in interest properly joined and served as defendants is a*
> *citizen of the State in which such action is brought.*

(Emphasis added.)

"If the court determines that it lacks federal subject matter jurisdiction, then remand is

mandatory."  Apoian v. Am. Home Prods., Corp., 108 F. Supp. 2d 454, 455 (E.D. Pa. 2000).

"Lack of subject matter jurisdiction voids any decree entered in a federal court and the

---

[2]Presumably, Plaintiff, a resident of Arkansas, filed this case in a federal court in
Pennsylvania so that Defendant could not remove it under the forum defendant rule.

continuation of litigation in a federal court without jurisdiction would be futile." <u>Steel Valley Auth. v. Union Switch & Signal Div.</u>, 809 F.2d 1006, 1010 (3d Cir. 1987).

Federal "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." <u>Steel Valley Auth.</u>, 809 F.2d at 1010.  In <u>Brown v. Francis</u>, 75 F.3d 860 (3d Cir. 1996), the Third Circuit interpreted "all doubts" to mean that if "there is any doubt as to the propriety of removal, [the] case should not be removed to federal court." <u>Id.</u> at 865.  The "removing party bears the burden of proving the existence of federal subject matter jurisdiction." <u>Apoian</u>, 108 F. Supp. 2d at 455.

28 U.S.C. § 1447(c) states:

> A motion to remand the case on the basis of any defect in the removal procedure must be within 30 days after filing of the notice of removal under section 1146(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Remand to the state court is therefore appropriate for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." <u>PAS v. Travelers Ins. Co.</u>, 7 F.3d 329, 352 (3d Cir. 1993).

## III.   <u>Parties' Contentions With Respect to Removal</u>

### A.   <u>Plaintiff Allen</u>

Allen argues that this Court must remand the case for lack of subject matter jurisdiction because neither diversity nor federal question jurisdiction exists.  Allen contends that there is no diversity jurisdiction for two reasons.  First, the amount-in-controversy is less than $75,000. Second, GSK is a Pennsylvania citizen and Allen originally filed this action in Pennsylvania state

court.

Allen asserts that the forum defendant rule, discussed above, bars GSK, a Pennsylvania citizen, from removing a case filed in Pennsylvania state court even if the case otherwise meets the requirements for diversity jurisdiction.  Allen disputes GSK's argument that the forum defendant rule only applies to defendants "properly joined and served," and therefore does not prevent GSK, who remains unserved, from removing the case at hand.  Allen cites to several cases from this District, where judges have found that unserved, in-state defendants may not claim that an action is removable because they were not "properly joined and served" pursuant to Section 1441(b).

As to federal question jurisdiction, Allen contends that it too is lacking because his claims do not arise under federal law.  Allen argues that his Complaint only raises state law claims and that the Complaint controls, according to the "well-pleaded complaint" rule.  Allen asserts that the "well-pleaded complaint" rule precludes GSK from using its intended affirmative defenses as grounds for federal jurisdiction.  Allen does not cite <u>Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308 (2005), relied on by GSK, but instead points to several other cases, including <u>Merrell Dow Pharmaceuticals Inc. v. Thompson</u>, 478 U.S. 804 (1986) to support his argument.[3]

**B.    <u>Defendant GSK</u>**

GSK argues that federal jurisdiction is proper because diversity jurisdiction exists and because federal question jurisdiction exists.  GSK supports its claim of diversity jurisdiction by

---

[3] Both <u>Grable</u> and <u>Merrell Dow</u> are discussed in greater detail below.

noting that the parties are clearly citizens of different states and by arguing that the Complaint does meet the amount-in-controversy requirement.  According to GSK, because the Complaint states that the amount-in-controversy "exceeds . . . $50,000," it may actually exceed $75,000, and the Complaint therefore satisfies the amount-in-controversy requirement for federal jurisdiction.

GSK also contends that Section 1441(b) (the forum defendant rule) only bars removal of diverse cases when defendants are "properly joined and served."  GSK argues that because it removed the case before it was served, it was not "properly . . . served," and the action is therefore removable pursuant to the plain language of Section 1441(b).

GSK then argues that federal question jurisdiction exists because Plaintiff's claims necessarily raise federal issues even if they are purported to be state law claims.  According to GSK, Grable establishes that federal jurisdiction extends to state law claims which turn on disputed issues arising under federal statutes or complex federal regulatory schemes.  GSK contends that Allen's claims require the Court to interpret rules and regulations promulgated by the Federal Drug Administration ("FDA") and thus give rise to federal question jurisdiction. Specifically, GSK contends that Allen's assertions of misbranding and fraud on the FDA trigger federal question jurisdiction.  GSK requests that the Court deny Allen's motion for remand.

## IV.   Discussion

### A.   Diversity Jurisdiction

#### 1.   GSK's Removal Prior to Service

As noted above, GSK removed this action before Allen served the Complaint.  GSK now argues that removal was proper in part because it was not "properly served."  According to GSK,

even though it is a resident of Pennsylvania, the plain language of Section 1441(b) does not bar

removal because it only applies to in-state defendants who were "properly . . . served."  Although

GSK's argument has been adopted by some courts, it has been rejected by many more, and does

not survive close and careful statutory analysis.

The purpose of diversity jurisdiction is to avoid prejudice against out-of-state defendants.

See McSparran v. Weist, 402 F.2d 867, 876 (3d Cir. 1968).  Historically, out-of-state defendants

feared that local courts would be biased against them, and a federal forum was viewed as a

solution to the possible bias.  See 13B Charles Alan Wright, Arthur R. Miller & Edward H.

Cooper, Federal Practice and Procedure § 3601 (2d ed.1987).  "The need for such protection

[from local bias] is absent, however, in cases where the defendant is a citizen of the state in

which the case is brought."  Lively v. Wild Oats Mkts., Inc., 456 F.3d 933, 939 (9th Cir. 2006).

Therefore, the forum defendant rule prohibits removal when at least one defendant is a citizen of

the forum state, because in that situation, the rationale for diversity jurisdiction no longer exists.

With an in-state defendant, the likelihood of local bias is reduced, if not eliminated, and removal

to a federal forum is not warranted.  See Dresser Indus., Inc. v. Underwriters at Lloyd's of

London, 106 F.3d 494, 499 (3d Cir. 1997).

If there were no restrictions on the forum defendant rule, a plaintiff could abuse it by

naming as a second defendant in the Complaint (i.e. "joining") an in-state defendant that the

plaintiff had no honest intention of pursuing in litigation, never intended to serve, and in fact did

not serve with process.  In order to prevent such potential abuses, Section 1441(b) requires that

any in-state defendant be "properly joined and served."  See Stan Winston Creatures Inc. v. Toys

"R" Us, Inc., 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003) ("The purpose of the 'joined and served'

requirement is to prevent a plaintiff from blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve.")

There is no sound reason to conclude that the purpose of the "joined and served" requirement is to allow unserved, in-state defendants to remove the action, claiming that Section 1441(b) does not apply because removal occurred prior to service.  GSK contends that according to the plain language of the statute, a forum defendant may remove a case prior to service so that a federal court can exercise jurisdiction.  However, this reading controverts the logic and policy behind diversity jurisdiction.  "It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."  <u>Griffin v. Oceanic Contractors, Inc.</u>, 458 U.S. 564, 575 (1982).  As noted above, the intent behind the "joined and served" requirement is to avoid gamesmanship by preventing plaintiffs from joining forum defendants merely to preclude federal jurisdiction.  Given this intent, it would be especially absurd to interpret the same "joined and served" requirement to actually condone a similar kind of gamesmanship from defendants – removing before service, in order to later claim federal jurisdiction, for lack of proper service.

Plain reading of the statute's plain language is more plausible.  Because the operative phrase is "joined and served" and not "named and served" or simply "served," the statute contemplates a situation in which one defendant is joined to another defendant, presumably an in-state defendant joined to an out-of state defendant.  The "joined and served" language therefore can only apply when there are multiple, named defendants.  Under this interpretation, GSK cannot take advantage of the "joined and served" language, since it is the only named

defendant and since it is an in-state defendant.[4]  Although no other court appears to have reached

such a conclusion, I adopt it as an alternative, but viable interpretation of the statute.[5]

As Judge Savage of this District explained in a nearly identical case, "Congress intended

[Section] 1441(b) to restrict, not expand, federal jurisdiction.  Accordingly, exercising

jurisdiction that is otherwise lacking simply because the resident defendant obtained notice and

copies of the complaint prior to service would frustrate Congressional intent."  Malone v.

GlaxoSmithKline, P.L.C., et. al., C.A. 07-5048, Doc. No. 4 (citing Oxendine v. Merck & Co.,

Inc., 236 F. Supp. 2d 517, 524-25 (D. Md. 2002)).[6]  Both Judge Brody and Judge Joyner, also of

this District, have agreed with Judge Savage's interpretation of Section 1441(b).  See Evans v.

GlaxoSmithKline, P.L.C., et. al., C.A. No. 07-5046, Doc. No. 11 (granting motion to remand

when in-state defendant removed case prior to service); Hance v. GlaxoSmithKline, P.L.C., et. al.

C.A. No. 07-5047, Doc. No. 10 (same); and Scott  v. GlaxoSmithKline, P.L.C., et. al. C.A. No.

---

[4] Although the Plaintiff has named both "Glaxosmithkline PLC" and "Smithkline Beecham Corporation d/b/a Glaxosmithkline" as defendants, they are the same defendant. Furthermore, although the Plaintiff also named "John Doe Defendants A-Z" as possible defendants, such unknown defendants are not taken into account at this point.  See 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.")

[5] One court has interpreted the "joined and served" requirement only to apply to cases where at least one of several defendants has been served, but a named forum defendant has not been served; when no defendant had been served, remand was granted.  See Holmstrom v. Harad, 2005 WL 1950672, at *2 (N.D. Ill. August 11, 2005).

[6] GSK suggests that Oxendine has somehow been overruled, but this suggestion is misplaced.  According to GSK, Clawson v. FedEx Ground Package System, Inc., 451 F. Supp. 2d 731 (D. Md. 2006) affects Oxendine's description of, and conclusion regarding, the Congressional intent behind Section 1441(b).  Clawson indeed contains some reasoning contrary to that of Oxendine, but both Clawson and Oxendine are district court cases, written by different judges, in the District of Maryland.  Oxendine remains solid, persuasive authority.

07-5049, Doc. No. 12 (same) ("This case appears to be one of a growing number of actions in which a "home state" defendant acts to quickly remove an action from the state court in which it was originally filed to U.S. District Court on the basis of diversity jurisdiction before the removing defendant can be served with original process. . . . While this Court acknowledges the rationale behind those decisions adhering to the literal language of the statute, respectfully we do not agree.")

GSK has submitted an opinion by Judge McLaughlin of this District that GSK views as support for its position: <u>Vanderwerf v. GlaxoSmithKline, P.L.C., et. al.</u>, C.A. 05-1315, Doc. No. 16 (May 5, 2005). In <u>Vanderwerf</u>, there were two defendants, GSK, a Pennsylvania citizen, and Eli Lilly, an Indiana citizen. Eli Lilly removed the case before the plaintiff served GSK, and Judge McLaughlin found that given a literal reading of Section 1441(b), GSK was not "joined and served" and removal was therefore proper.

The Court finds the case at hand distinguishable from <u>Vanderwerf</u> where the removing defendant was an out-of-state defendant which removed the case after it had been served.[7] The removal in <u>Vanderwerf</u> was actually in accordance with the rationale behind the "joined and served" requirement because the removing party was an out-of-state resident. Eli Lilly was

---

[7] In <u>Vanderwerf</u>, the plaintiff filed the complaint and served Eli Lilly ten days later, on February 28, 2005. Eli Lilly, the out-of state defendant, filed the notice of removal on March 21, 2005, and at that point GSK, the in-state defendant, still had not been served. Pursuant to 28 U.S.C. § 1446(b), Eli Lilly was required to remove the case within 30 days of receiving service. Section 1446(b) provides that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

"entitled to act to remove [the] case based on the circumstances at the time [it] was sued and not required to guess whether a named resident defendant [would] ever be sued." <u>Stan Winston Creatures</u>, 314 F. Supp. 2d at 181.  In contrast, in the present case, there are no named defendants other than GSK, let alone any out-of-state defendants who could benefit from the protections of the "joined and served" requirement.[8]  Instead, it appears that GSK, an in-state defendant, seeks to avail itself of a federal forum, contrary to the rationales behind diversity jurisdiction and the forum defendant rule, as discussed above.

In addition to <u>Vanderwerf</u>, GSK also cites to several cases from the District of New Jersey in support of its position,[9] but contrary cases from the same district are more persuasive.  <u>DeAngelo-Shuayto v. Organon USA Inc.</u>, 2007 WL 4365311 (D.N.J. Dec 12, 2007) and <u>Fields v. Organon USA Inc.</u>, 2007 WL 4365312 (D.N.J. Dec 12, 2007) granted motions to remand when presented with facts similar to those presently at issue.  In both <u>DeAngelo-Shuayto</u> and <u>Fields</u>, an in-state defendant removed the case before the plaintiff served the complaint.  The Court discussed the rationales behind diversity jurisdiction, the forum-defendant rule, and the "joined and served" requirement, ultimately concluding that remand was proper.  The Court found that "a literal interpretation of [Section 1441(b)] creates an opportunity for gamesmanship by defendants, which could not have been the intent of the legislature in drafting the 'properly

---

[8] In accordance with 28 U.S.C. § 1441(a), the citizenship of defendants sued under fictitious names is disregarded.  <u>See</u> fn. 3.

[9] Namely, GSK relies on <u>Frick v. Novartis Pharmaceuticals Corp.</u>, 2006 WL 454360 (D.N.J. Feb. 23, 2006) (denying motion to remand when in-state defendant removed case prior to service); <u>Thompson v. Novartis Pharmaceuticals Corp.</u>, 2007 WL 1521138 (D.N.J. May 22, 2007) (same); <u>Ripley v. Eon Labs, Inc.</u>, 2007 WL 2406806 (D.N.J. Aug. 16, 2007) (same); and <u>Jaeger v. Schering Corp.</u>, 2007 WL 3170125 (D.N.J. Oct. 25, 2007) (same).

joined and served' language." <u>DeAngelo-Shuayto</u>, 2007 WL 4365311, at *5; <u>Fields</u>, 2007 WL 4365312, at *5. The Court held that "the 'properly joined and served' language of § 1441(b) does not encompass the situation in which the removing party is a forum defendant, and that in such situations removal to federal court is improper." <u>Id.</u> <u>See also</u> <u>Vivas v. Boeing Co.</u>, 486 F. Supp. 2d 726 (N.D. Ill. 2007) (finding that in-state defendant could not avoid forum defendant rule barrier to removal through tactic of filing removal notices before it was served).

Furthermore, as a general matter, a court must consider all named defendants, regardless of service, in determining the propriety of removal based on diversity jurisdiction. <u>See</u> <u>Pullman Co. v. Jenkins</u>, 305 U.S. 534, 540-41 (1939); <u>Pecherski v. General Motors Corp.</u>, 636 F.2d 1156, 1159 (8th Cir.1981) (finding that the 1948 amendment to the removal statute did not change the holding in <u>Pullman Co. v. Jenkins</u>, 305 U.S. 534 (1939) which provides that the presence of a local defendant defeats removal jurisdiction, whether the defendant is served or not). Although <u>Pullman</u>, <u>Pecherinski</u>, and their progeny address situations where complete diversity is lacking, their reasoning is instructive for present purposes. "Despite the 'joined and served' provision of [S]ection 1441(b), the prevailing view is that the mere failure to serve a defendant who would defeat diversity jurisdiction does not permit a court to ignore that defendant in determining the propriety of removal." <u>Pecherinski</u>, 636 F. 2d at 1160. Logic does not permit considering the citizenship of unserved defendants for purposes of assessing diversity, but then ignoring it for purposes of the forum defendant rule.

The Court is mindful that when ruling on a motion to remand, "a district court must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff."

<u>Boyer</u>, 913 F.2d at 111.  Given that general principle, and in the absence of binding precedent to the contrary, the Court will not allow GSK, as an in-state defendant, to remove a case prior to service in order to later claim that it was not "properly served" under Section 1441(b).

> **2.      Amount-in-Controversy**

As discussed above, this Court concludes that even if diversity jurisdiction would otherwise exist, Section 1441(b) precludes a single, in-state defendant from removing an action unless it raises a federal question.  Resolving the present dispute as to the amount-in-controversy therefore would have no affect on this case and the Court need not address the issue.

> **B.      <u>Federal Question Jurisdiction</u>**

> **1.  General Framework and Relevance of <u>Grable</u>**

Federal jurisdiction exists over cases which "arise under" federal law, as discussed above. Generally, this means that a well-pleaded complaint establishes that federal law has created a cause of action asserted in the complaint.  According to the well-pleaded complaint rule, federal question jurisdiction may not be based on a defense that raises federal issues.  <u>Caterpillar</u>, 482 U.S. at 392.  However, as clarified in <u>Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg</u>, 545 U.S. 308 (2005), federal jurisdiction can lie over state-law claims that "implicate significant federal issues" and "turn on substantial questions of federal law."  GSK argues that pursuant to <u>Grable</u>, federal question subject matter jurisdiction exists over this case.[10]

---

[10] "As many courts and commentators have recognized, '[t]he most difficult single problem in determining whether federal question jurisdiction exists is deciding when the relationship of the federal law to a case is such that the action may be said to be one "arising under" that law.'" <u>Pennsylvania v. Eli Lilly & Co., Inc.</u>, 511 F. Supp. 2d 576, 578-79 (E.D. Pa. 2007) (quoting 13B Wright, et al., <u>Federal Practice and Procedure</u> 17-18 (2d ed. 1984)).

Grable addresses a "longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction," that is, federal jurisdiction over state law claims which implicate significant federal issues.  Id.  Grable applies to a slim category of cases.  Empire Healthchoice Assur. Inc. v. McVeigh, 547 U.S. 677, 701 (2006).

Grable involved a quiet title action in which the federal government had seized the plaintiff's property.  The issue was whether the government had given the plaintiff proper notice of the seizure, and to resolve this issue, the court had to interpret a federal tax provision.  The correct interpretation of the federal provision was actually the only disputed issue in Grable, and the U.S. Supreme Court explained that "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court."  Grable, 545 U.S. at 315.  Also, in finding that federal jurisdiction existed, the U.S. Supreme Court relied on the government's "direct interest in the availability of a federal forum to vindicate its own administrative action" and the "microscopic effect on the federal-state division of labor" that federal jurisdiction over the action would create.  Grable, 545 U.S. at 309.

Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), which Allen relies on and which GSK glosses over, controls here.  In Merrell Dow, the plaintiff alleged that use of a drug manufactured by the defendant caused birth defects.  The Complaint set forth six counts, including that the drug was "misbranded" in violation of the Food, Drug, and Cosmetic Act ("FDCA").  Merrell Dow, 478 U.S. at 805.  The Complaint here states a similar labeling-related cause of action, which GSK improperly categorizes as giving rise to federal jurisdiction.

In Merrell Dow, the U.S. Supreme Court found that the case was properly remanded to

state court, even with the cause of action alleging misbranding in violation of the FDCA.  Id. at

817.  "[T]he mere presence of a federal issue in a state cause of action does not automatically

confer federal-question jurisdiction."  Id. at 813.  Merrell Dow reasoned that despite the fact that

the state law claims required reference to the FDCA, the claims did not sufficiently implicate

important federal interests.  Merrell Dow also based its conclusion on the fact that the FDCA

does not provide a federal cause of action.

       Grable does not disturb Merrell Dow.  Grable, 545 U.S. at 316 ("Merrell Dow . . . is not

to the contrary.)[11]  Grable clarified, however, that lower courts should not read Merrell Dow to

require a federal cause of action as a prerequisite to federal jurisdiction when state law claims

implicate significant federal issues.  Grable explained that in Merrell Dow, the absence of a

federal cause of action was just one element in the Court's analysis.  Thus, in Grable, the Court

clearly stated that "arising under" federal jurisdiction over state law claims may be present if

there is no federal cause of action.  However, the Court has clarified that the circumstances in

which this is true are quite rare, as noted above.  See Empire, 547 U.S. at 701.

       GSK cites to Grable and makes the misleading statement that "numerous federal courts

have acknowledged this broader scope of 'arising under' federal question jurisdiction and

retained jurisdiction over state law claims that turn on disputed issues arising under federal

---

[11] Grable did distinguish itself from Merrell Dow, in part based on the distribution of
labor between state and federal courts, noting the rarity of quiet title actions that involve
contested issued of federal law.  Grable concluded that, contrary to the situation in Merrell Dow,
"jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the
normal currents of litigation" and "there is no good reason to shirk from federal jurisdiction over
the dispositive and contested federal issue at the heart of the state-law title claim."  Grable, 545
U.S. at 319-20.

statutes or complex federal regulatory schemes."  However, of the cases that GSK cites in

support of this proposition, none addresses products-liability claims against a pharmaceutical

manufacturer, and only one even involves the FDCA.  That case, In re Zyprexa Prods. Liab.

Litig., 375 F. Supp. 2d 170 (E.D.N.Y. 2005), found that federal jurisdiction existed over one

variety of FDCA-related claims.  Specifically, In re Zyprexa concerned a state's attempt to obtain

reimbursements for Medicaid payments it had made for off-label uses.  In re Zyprexa does not

directly relate to the present dispute because, as an initial matter, it did not involve allegations

that a drug manufacturer's product caused harm, as is the case here.  Moreover, in a case

involving claims similar to those in In re Zyprexa, Judge Pratter of this District thoughtfully

declined to follow it:  "Although federal regulatory schemes may be implicated here, 'it takes

more than a federal element to open the "arising under" door.'  The mere presence of a federal

standard embedded in a state law cause of action is not sufficient to warrant federal subject

matter jurisdiction where there is no federal remedy for a violation of the federal statute."

Pennsylvania v. Eli Lilly & Company, Inc., 511 F. Supp. 2d 576, 584 n. 3, 584-585 (E.D. Pa.

2007) (quoting Empire, 547 U.S. at 701, and citing Merrell Dow, 478 U.S. at 810-14).  In fact,

this Court can not identify a case outside the Eastern District of New York which has found

federal jurisdiction over these kinds of Medicaid fraud cases.[12]  See also Pennsylvania v. Eli

Lilly, 511 F. Supp. 2d at 584 n. 3 (noting a split between the Eastern District of New York on the

one hand and Alaska and Texas on the other and eventually siding with Alaska and Texas).

---

[12] In addition to his opinion in In re Zyprexa, Judge Weinstein also found federal
jurisdiction for similar Medicaid-related fraud claims in a different case.  See West Virginia ex
rel. McGraw v. Eli Lilly, 476 F. Supp. 2d 230 (E.D.N.Y. 2007).

Thus, of the cases GSK cites to support its claim that federal jurisdiction exists in this case pursuant to Grable, only In re Zyprexa involves the FDCA, and it involves Medicaid fraud claims, not a products liability action.  Furthermore, In re Zyprexa takes a minority position.

Generally, for pharmaceutical products liability cases filed in state court and raising FDCA-related state law claims, federal "arising under" jurisdiction does not exist pursuant to Merrell Dow.  See e.g. Greene v. Novartis Pharmaceuticals Corp., 2007 WL 3407429 (M.D. Ga. 2007) (remanding case where plaintiff alleged that defendant pharmaceutical manufacturer fraudulently misrepresented drug's safety and failed to warn of drug's dangers); Caggiano v. Pfizer, Inc., 384 F. Supp. 2d 689 (S.D.N.Y. 2005) (remanding case where plaintiff alleged "classic state-law claims [but] the complaint [was] also peppered with allegations that the defendants violated various federal statutes and regulations . . . for example . . . that defendants deliberately failed to seek required FDA approval for many uses . . .").

### 2.    GSK's Specific Grounds For Claiming Federal Jurisdiction

As noted above, GSK specifically argues that two of the plaintiff's assertions trigger federal jurisdiction pursuant to Grable:  inadequate labeling and fraud on the FDA.[13]  Given the controlling U.S. Supreme Court opinion in Merrell Dow, this Court finds that Allen's claims of inadequate labeling do not create federal subject matter jurisdiction.  See Merrell Dow, 478 U.S. at 817 (finding that Plaintiff's allegation of inadequate labeling, based on alleged violation of

---

[13] As noted above, Allen's Complaint states the following claims:  1) negligent and gross negligent failure to warn; 2) fraudulent misrepresentation; 3) negligence; 4) strict liability; 5) breach of express warranty; 6) breach of implied warranty of merchantability and fitness; 7) breach of warranty of fitness for a particular purpose; 8) misrepresentation; 9) fraudulent concealment; and 10) negligent and intentional infliction of emotional distress.

misbranding provision of the FDCA, did not provide a basis for federal jurisdiction).

It is worthwhile to examine one of GSK's labeling arguments in detail because it conflates the concept of federal jurisdiction with that of preemption. GSK attempts to argue that the question of whether federal law preempts the plaintiff's labeling claims is a question that necessarily involves federal law and therefore triggers federal jurisdiction. However, case law squarely negates GSK's position. "[I]t is now well-settled that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." <u>Caterpillar</u>, 482 U.S. at 393.[14]

The U.S. Supreme Court has explained that the only exception occurs in the "extraordinary" case of complete preemption. "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." <u>Id.</u> The complete preemption doctrine, however, does not apply to misbranding claims under the FDCA or even to FDCA-related state law claims in general. <u>See Pennsylvania v. Eli Lilly</u>, 511 F. Supp. 2d at 583 ("No court has held that the federal FDCA completely preempts a plaintiff's recovery action for purposes of removal jurisdiction."). <u>See also Alaska v. Eli Lilly & Co.</u>, 2006 WL 2168831, at *4 (D. Alaska 2006); <u>Dawson ex rel. Thompson v. Ciba-Geigy Corp., USA</u>, 145 F. Supp. 2d 565,

---

[14]The Third Circuit's most recent discussion of preemption occurs in <u>Colacicco v. Apotex</u>, Inc., 521 F.3d 253 (3d Cir. 2008), a very fact-based decision holding that a plaintiff's claim of mislabeling the drug Paxil was preempted because of substantial FDA involvement in approving the labeling for the drug, but does not support any broad based preemption doctrine, such as theoretically urged by Defendant in support of this Court's removal jurisdiction.

571-73 (D.N.J. 2001); McCallister v. Purdue Pharma L.P., 164 F. Supp. 2d 783, 792 (S.D. W.Va. 2001).

It is important not to confuse complete preemption with ordinary preemption, since it is only the former that confers federal jurisdiction.  See Lazorko v. Pennsylvania Hosp., 237 F.3d 242, 248 (3d Cir. 2000) ("Complete preemption contrasts, however, with another form of preemption, substantive preemption, which displaces state law but does not, as a defense, confer federal question jurisdiction."); King v. Retailers Nat. Bank, 388 F. Supp. 2d 913, 915 (N.D. Ill. 2005) ("Complete preemption, which provides a basis for federal question jurisdiction, should not be confused with conflict preemption, which is a defense to the merits of a claim and not a basis for federal jurisdiction.").  Thus, Allen's labeling claims do not provide a basis for federal jurisdiction, even if GSK intends to argue that they are preempted, because the potential defense available to GSK is that of ordinary, not complete preemption.

GSK's fraud on the FDA argument, also related to preemption, fails as well.  In that argument, GSK contends that Allen's claim of misrepresentation would constitute a fraud on the FDA claim, and pursuant both to Grable and Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 353 (2001), such a claim gives rise to federal question jurisdiction.  Even if Allen's Complaint stated a fraud on the FDA claim, and the Court holds it does not, a fraud on the FDA claim does not trigger federal jurisdiction.  Buckman holds that the FDCA impliedly preempts state law "fraud on the FDA" claims, but since preemption and federal jurisdiction are distinct concepts, Buckman provides little insight into "arising under" federal jurisdiction.  See Von Essen v. C.R. Bard, Inc., 2007 WL 2086483, at *3 (D.N.J. June 18, 2007) ("In support of removal, defendants rely on Buckman and two lower court opinions interpreting Buckman.

-19-

However, because <u>Buckman</u> and its progeny address ordinary preemption, as opposed to arising under jurisdiction, they are not controlling on the jurisdictional issue before the court.") (internal citations omitted); <u>see also</u> <u>Hinojosa v. Guidant Corp.</u>, 2006 WL 903720, at *5 (S.D. Tex. Apr. 7, 2006) ("[R]emoval and preemption are two distinct concepts").  As noted above, only complete preemption provides a basis for federal jurisdiction over state-law claims, and there is no reason to believe that complete preemption is presently at issue.

GSK has submitted to the Court a case from the Southern District of Mississippi, <u>Fowler v. First Chemical Corp., et. al</u>, C.A. No. 05-0016, Doc. No. 135 (Dec. 20, 2005), which found that the Federal Hazardous Substances Act (FHSA) preempts all state law claims regarding labeling requirements and that as a result, pursuant to <u>Grable</u>, federal jurisdiction existed over the plaintiff's claims.  <u>Fowler</u> does not support GSK's claim that Allen's fraud on the FDA argument gives rise to federal jurisdiction.

<u>Fowler</u> is not persuasive as to the present situation because, as an initial matter, the FHSA and FDCA create different statutory frameworks, and the preemption analysis for one statute is not necessarily applicable to the preemption analysis for a different statute.  Whether federal law preempts state law depends "on statutory intent," so preemption analysis begins with the language of a particular statute.  <u>See</u> <u>Morales v. Trans World Airlines, Inc.</u>, 504 U.S. 374, 383 (1992) (citing <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 55 (1990)).  Since the FHSA and FDCA are different statutes, a court's analysis as to preemption under the FHSA does not control preemption under the FDCA.  <u>Fowler</u> is thus not particularly helpful to resolving the dispute at

hand, which involves the FDCA.[15]

Furthermore, although <u>Fowler</u> held that the FHSA preempts state law labeling claims, the FHSA's preemption is ordinary, substantive preemption, which operates as a defense and does not confer federal subject matter jurisdiction.  <u>See</u> <u>Greenawalt v. Philip Rosenau Co., Inc.</u>, 471 F. Supp. 2d 531 (E.D. Pa. 2007) (finding that the FHSA does not create complete preemption and remanding action that presented FHSA-related state law claims) (citing <u>Goepel v. National Postal Mail Handlers Union</u>, 36 F.3d 306 (3d Cir. 1994).  <u>See also</u> <u>Krashna v. Oliver Realty, Inc.</u>, 895 F.2d 111, 112 (3d Cir. 1990) ("Because we do not find complete preemption, we find the district court lacked removal jurisdiction."); <u>Lontz v. Tharp</u>, 413 F.3d 435, 440 (4th Cir. 2005) ("And as a mere defense, the 'preemptive effect of a federal statute . . . will not provide a basis for removal.'") (quoting <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 6 (2003) (internal citations omitted)).  <u>Fowler</u> therefore is of little relevance to the facts of this case.  The Court finds that, contrary to GSK's argument, even if the Complaint presented fraud on the FDA claims, such claims do not under current law provide a basis for federal "arising under" jurisdiction.  GSK can, of course, raise and preserve its federal preemption defenses in state court.

## V.    <u>Conclusion</u>

As discussed above, GSK has the burden of proving that federal subject matter jurisdiction exists.  GSK has not met this burden.  For the reasons set forth in this memorandum, the Court does not have subject matter jurisdiction over the present action.  Therefore, Plaintiff's

---

[15] GSK cites to <u>Fowler</u> as part of a string cite that includes other cases involving various statutory frameworks, but none of the cases address claims related to the FDCA.  Consequently, they are of little relevance for the preemption argument presently at issue for the same reasons that <u>Fowler</u> is of little relevance.

Motion to Remand will be granted.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES ALLEN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GLAXOSMITHKLINE PLC; SMITHKLINE | : | |
| BEECHAM CORPORATION d/b/a | : | |
| GLAXOSMITHKLINE; and John Doe | : | NO. 07-5045 |

**<u>ORDER</u>**

AND NOW, this   30th    day of May, 2008, it is hereby ORDERED that Plaintiff's

Motion For Remand (Doc. No. 9) is GRANTED.  The Clerk shall close the case.


BY THE COURT:

s/Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\Kathy\07-5045 Allen v. GSK\Memo re Motion to Remand.wpd